Steffen, C. J.,
dissenting:
Despite the natural appeal of the majority’s opinion, and the laudable purposes which have prompted Ms. Buchanan to pursue this litigation, I am unable to find a basis within the applicable statutes for her right to prevail over the Clark County School District (hereinafter “CCSD”). I therefore respectfully dissent.
If this court were simply at liberty to rule based upon emotion and the poignancy associated with helping dogs and the purposes for which they are trained, I would not hesitate to climb aboard the majority’s bandwagon. Indeed, like so many among humankind, I have a great appreciation for “man’s best friend,” but unfortunately, that fact can have no bearing on the resolution of this appeal.
The majority, I suggest, erroneously interpret NRS 651.075(1)[1] as being applicable to the instant case. In the first place, the referenced statute makes it unlawful for places of public accommodation to “refuse admittance or service” (emphasis mine) to: (a) persons with visual, aural or physical disabilities accompanied by service animals such as a helping dog; and (b) to persons training such animals. The only reasonable inference to be drawn from the statute is that places of public accommodation must be accessible to such persons in the company of their service animals, including helping dogs. These persons are to be admitted and/or serviced. I do not perceive a basis for concluding that the statute was intended to apply to employees of a place of public accommodation, who are neither admitted nor serviced according to the ordinary and accepted meanings of those terms as used in the statute. They are entitled to be present at their respective places of employment under the terms of their hiring.
*1155 Moreover, reference to the extremely broad definition of a “place of public accommodation” as specified in NRS 651.050(2)(a) through (o), demonstrates that the legislature did not intend that disabled persons accompanied by helping dogs or other service animals be denied either admittance or service in any place where the public is invited, thereby assuring their entitlement to the same quality of life, insofar as possible, that all other persons enjoy by reason of the availability of such places of public accommodation. It is also clear from the broad definition of “place of public accommodation” and the language of NRS 651.075(l)(b), that persons training service animals such as helping dogs are also not to be denied access to such public places and the services provided therein because these ordinary experiences of life are necessary to the effective training of such animals in preparation for their role in assisting the disabled when they are visiting such places and utilizing such services.
NRS 651.070 bespeaks the purposes for which NRS 651.075(l)(a) and (b) were enacted by providing that “[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of . . . disability.” NRS 651.080 makes it a crime (misdemeanor) for any person to interfere with or deny or attempt to deny any right or privilege secured by NRS 651.070.
Under the majority’s interpretation of NRS 651.075(l)(b), public or private employers who deny their employees the right to train helping dogs and other service animals on the job, would be subject to criminal prosecution. We may thus assume, hypothetically, that if it were monetarily profitable to train helping dogs or other service animals, all school teachers who desired to earn additional money while they were teaching their students, could insist on their right to have their service animals in the classrooms with them. Although Anne Buchanan is a volunteer, training her helping dog for the charitable purpose of providing a highly beneficial service to the disabled, the majority’s ruling is in no sense limited to Ms. Buchanan or to employees who are training animals without benefit of monetary gain.
Even if the majority were to “rewrite” the statute and limit the purview of their opinion to persons who train service animals without monetary gain, the problems created by the majority should be readily apparent to all. Fortunately, we have many citizens who are charitably motivated, who would undoubtedly be willing to train service animals while at work. Thus, hospitals, pharmacies, restaurants, cafeterias, bakeries and any number of other places specifically named and/or otherwise included within *1156 the definition of “place of public accommodation” could be faced with untold problems such as maintenance of sanitary and sterile conditions and avoidance of dangerous distractions occasioned by employees who insisted upon having service animals in training on the job with them. When the legislature included, without spacial limitations, such facilities as hospitals, pharmacies and bakeries within the definition of “places of public accommodation,” there was no provision specifically limiting access to public areas only. However, by including employees among those who are entitled to be accompanied by service animals in training, the majority have expanded the scope of places of public accommodation to include all areas where employees are required to work, whether accessible to the public or not. Clearly, therefore, the majority have exposed such areas as those committed to “employees only” to the rights granted by the statutes as interpreted by the majority.
One must wonder how the majority would deal with a newborn nursery in a hospital where one or more of the pediatric nurses insisted on having a service animal in training at her side. Today’s ruling would not only permit it, but could subject the hospital to criminal sanctions if the nurse showed up training a helping dog on the job and was either terminated or forced to remove the dog. How about the bakery where the employee reaches down and pets or positions the service animal he or she is training, and then touches the bakery products destined for the consumer? Or how about the pharmacist who, while filling a prescription, is distracted by his training service animal to the fatal detriment of the customer? I am not comfortable with the anticipated response that people would not be that unreasonable, as we can expect otherwise based upon human experience.[2]
Another serious consequence of the majority’s ruling concerns the “tail wagging the dog.” Here, the CCSD is accorded no deference in determining how to best educate the students over whom it has control and responsibility. Instead of the CCSD determining what is best under all of the circumstances and conditions that can arise in the course of educating and safely housing and handling thousands of unique students and trying to please thousands of unique parents, the majority have determined that individual teachers may set school policy and standards when it comes to training service animals on the job. I am concerned about how far the majority’s opinion will travel in allowing the courts to micro-manage the schools and usurp the management *1157 prerogatives of the experts who have been trained and carefully selected for these very purposes.
I also suggest that the majority have concluded inadvisedly that “CCSD ignores the public’s interest in facilitating the training of helping dogs.” I believe it is highly unlikely that CCSD’s decision not to allow Ms. Buchanan to train the helping dog while engaged in her teaching duties at school would jeopardize the success of training programs designed to provide disabled persons with necessary service animals. The majority have cited no credible authority (aside from what I consider to be their own erroneous interpretation of NRS 651.075) in support of their conclusion. Indeed, if Ms. Buchanan’s inability to train her helping dog during the time of her teaching responsibilities will jeopardize the training program for these animals, as the majority seem to think, then the training program must be in serious difficulty — a premise the majority have failed to document.
Moreover, to conclude that CCSD has ignored the public interest in facilitating the training of helping dogs suggests that the school district should have balanced its decision involving Ms. Buchanan more in favor of animal training for the disabled than the educating of its students, a proposition that is unsound on its face. CCSD’s primary responsibility is to see that the students under its jurisdiction receive the best education possible under conditions that are safe and conducive to learning and development. CCSD has no other competing allegiance, and I suggest that it is unwise for this court to superimpose its own lack of experience and insight upon the operational decisions of the school district in whom the public trust for making these decisions is reposed.
I also find it difficult to accept the logic that because teachers are allowed to have such sources of “distraction” as “caged rabbits, snakes, lizards, breeding gerbils, rats, and aquarium[s] full of fish” in the classroom, CCSD cannot restrict the presence of other distracting animals, such as helping dogs. The syllogism posed by the majority is unconvincing. CCSD has every right to conclude that certain types of living creatures properly housed within certain classrooms enhance the learning experiences that are determined to be compatible with the school’s mission to educate the students. This does not mean that because the school district allows certain animals to be securely exhibited in classrooms, that all animals must be allowed to be similarly exhibited. To suggest that CCSD cannot differentiate between the creatures it will use as part of the educating process is hardly the prerogative of this court, and is certainly not warranted from the evidence of record.
*1158 My point is that if CCSD had decided to accommodate Ms. Buchanan and her desire to train the helping dog while simultaneously fulfilling her responsibilities to her students, I would have had no difficulty accepting the decision as being within the discretionary authority of the school district. For the same reason, I would sustain the CCSD in its decision not to allow teachers to train helping dogs in the classrooms. Thus, if the Carson City School District is willing to allow the training of helping dogs in the classroom, I would not interfere in its right to make that decision. But quite like students and parents, school district officials have differences of opinion as to the best methods of educating students, and this court is simply not equipped or empowered to conclude that since one method appears to work successfully in one school district, other school districts are bound to follow suit.
The major flaw in the majority’s opinion is its erroneous conclusion that NRS 651.075 applies to employees of “places of public accommodation.” Because of the majority’s ruling, virtually all employers that admit the public to their places of business, public or private, must now realize that this court has authorized their employees to undertake the training of service animals on the job, and any attempt to interfere with the presence and training of such animals by their employees may subject the employer to criminal sanctions. Perhaps the legislature will see fit to remedy some of the problems that appear to be a likely result of today’s decision.
For the reasons noted above, I respectfully dissent, and would reverse the order of the district court granting the preliminary injunction against CCSD.

In pertinent part, NRS 651.075(1) provides:
1. It is unlawful for a place of public accommodation to:
(a) Refuse admittance or service to a person with a visual, aural or physical disability because he is accompanied by a guide dog, hearing dog, helping dog or other service animal;
(b) Refuse admittance or service to a person training such an animal

Parenthetically, I note that neither the majority opinion nor this dissent has any bearing on the right of disabled persons to have their helping dogs or other service animals with them in the places of their employment.